(R.D. 11772)

EXBROOK, INC. v. UNITED STATES

Entry No. 13389.

(Decided August 16, 1972)

*Siegel, Mandell & Davidson* (*Harvey A. Isaacs* and *Steven S. Weiser* of counsel) for the plaintiff.

*Harlington Wood, Jr.*, Assistant Attorney General (*John A. Winters*, trial attorney), for the defendant.

WATSON, Judge: This appeal for reappraisement places in issue the dutiable value of certain cotton shirts imported from Japan. They were appraised on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at the "invoiced unit value[s], plus items marked X, plus 37% pkd." Plaintiff claims the basis of valuation should be

export value as set out in section 402(b) of said act, as amended, in the amount of $16.41 per dozen or, in the alternative, constructed value in the same amount.

The relevant statutory provisions of section 402, Tariff Act of 1930, as amended, are as follows:

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price; at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

\*    \*    \*    \*    \*    \*    \* ·

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restriction as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchan-

dise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

(3) The term "purchasers at wholesale" means purchasers who buy in the usual wholesale quantities for industrial use or for resale otherwise than at retail; or, if there are no such purchasers, then all other purchasers for resale who buy in the usual wholesale quantities; or, if there are no purchasers in either of the foregoing categories, then all other purchasers who buy in the usual wholesale quantities.

      *   *   *   *   *   *   *

Initially, our attention must focus on plaintiff's claim for valuation on the basis of export value since such a basis is given a statutory preference to that of constructed value. Since my analysis of the evidence leads to a resolution on the basis of export value, the record will be discussed as it relates to that basis of valuation.

The merchandise involved herein was sold for export by Nanko Bussan, Ltd. of Osaka, Japan [hereinafter referred to as Nanko]. Negotiations took place between the plaintiff and Nanko concerning the price of shirts manufactured in accordance with plaintiff's specifications resulting in a price of $16.41 per dozen for the merchandise at issue. Nanko did not sell to all purchasers at wholesale, making plaintiff a selected purchaser within the meaning of section 402(f)(1)(B). As such, if an export value is to be found, it must arise from circumstances which permit a finding that the price to the plaintiff was in the ordinary course of trade and fairly reflected market value.

In the absence of sales in the home market and to third countries, reference is often made to certain factors which tend to indicate a general "fairness" in the transaction and a likelihood that the price reflected market value.[1] In addition, proof of constructed value or analogous evidence often present in support of an alternate claim is sometimes used to buttress the claimed export value.[2]

In this case plaintiff has proved that it is unrelated to Nanko and negotiated at arm's length with Nanko under normal market conditions.[3] In addition, plaintiff's president testified that the price arrived at was always close to that offered by other companies (R.25), within

---

[1] See for example *Mantell Export Co.* v. *United States*, 58 Cust. Ct. 662, 673, 674, R.D. 11290 (1967) ; *United States* v. *F. W. Myers & Co., Inc.*, 63 Cust. Ct. 706, A.R.D. 264, 306 F. Supp. 1396 (1969).

[2] See *United States* v. *Acme Steel Company*, 51 CCPA 81, 89, C.A.D. 841 (1964).

[3] In the market under consideration this entailed dealing with trading companies, the only business entities capable of selling for export under the Japanese quota system.

twenty cents per dozen, the difference dependent on variations in details of specifications. I give his testimony, based on a familiarity with the Japanese export market, a good measure of credence.

In addition, plaintiff has adduced evidence derived from sales confirmation No. 3347 (covering the importation in question and placed in evidence as part of exhibit 1) and from the affidavit of Nanko's managing director (exhibit 1) tending to show that the negotiated price was one which covered the costs of manufacture, general expenses and profit.

The one questionable circumstance which might have rebutted plaintiff's proof has been adequately explained. It appears that during the relevant period Nanko sold such merchandise to Marshall Field & Co. of Chicago at a price higher than the price to plaintiff. This would ordinarily indicate that the lower price did not fairly reflect market value. However, I am of the opinion that the sales to Marshall Field were made in a manner which placed the sales outside the ordinary course of trade and in an amount which is "de minimus" in comparison with the sales to plaintiff. The record, including the reports of treasury agents introduced by defendant, indicates that the sales to Marshall Field & Co. were made pursuant to an arrangement by which plaintiff was credited with a portion of the profits as if it had made the sale. This circumstance, coupled with the fact that said sales were in an amount of approximately $25,000, as against sales of approximately one and a half million dollars to plaintiff, leads to a conclusion that they were not made in the ordinary course of trade. Consequently, the sales to Marshall Field & Co. are of no value as indicators of a market value different from that claimed by plaintiff.

Defendant makes additional objections to plaintiff's proof on the grounds that the cost of "specifications" supplied by plaintiff to the seller and the financial benefit flowing to the seller from visits by the plaintiff's employees ought to be reflected in the claimed export value. The basic flaw in these objections is in demanding a rigorous proof of the elements of cost of production in order to prove export value. This does not form part of plaintiff's burden of proof.[4] Aside from this, the "specifications" and visits by plaintiff's employees would not comprise part of the cost of production of the importation. The "specifications" are the instructions which every buyer must give to a manufacturer and the visits were inspectional in nature. Both are elements which relate primarily to the purchaser's role in the transaction. The supply of patterns or machinery, which might have constituted a genuine contribution by the plaintiff to the costs of production, was explicitly denied by plaintiff's president.

---

[4] *Cf. F. W. Myers & Co., Inc., supra,* page 717.

228

Further, objections by defendant based on the manner in which this merchandise was entered (at $15.63 per dozen and a "Purchasing Commission" of 78¢ per dozen) have no effect in the face of positive proof at trial that the price was $16.41 per dozen.

In light of the above, I make the following findings of fact:

1. The merchandise involved herein consists of men's shirts, exported from Japan by Nanko Bussan, Ltd. of Osaka, Japan in 1964.

2. The merchandise does not appear on the Final List of the Secretary of the Treasury, T.D. 54521.

3. The merchandise was appraised on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended, at the invoiced value, plus items marked X, plus 37 percent, packed, resulting in an appraised value of $22.19 per dozen.

4. Plaintiff claims the merchandise should be appraised on the basis of export value as defined in section 402(b) of said act, as amended, at $16.41 per dozen.

5. During the period in question the merchandise was sold predominantly to Exbrook, Inc. at a price of $16.41 per dozen, net packed, and was not sold for home consumption.

6. The parties to the transaction were independent and unrelated and the price was arrived at through bona fide negotiations, covered the costs of manufacture, general expenses and profit of the seller and was similar to that of other sellers in the market under consideration.

On the basis of these facts, I make the following conclusions of law:

1. Export value as defined in section 402(b) of the Tariff Act of 1930, as amended, is the proper basis of appraisement of this merchandise.

2. The sale price of $16.41 per dozen fairly reflects the market value of this merchandise.

3. $16.41 per dozen is the export value of this merchandise.

Judgment will issue accordingly.